J-S17017-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAWRENCE CREWS | : | |
| | : | |
| Appellant | : | No. 1870 EDA 2023 |

Appeal from the Judgment of Sentence Entered January 31, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0003714-2021

BEFORE: MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED AUGUST 26, 2025**

Lawrence Crews appeals from the judgment of sentence entered following his convictions for involuntary deviate sexual intercourse by forcible compulsion, indecent assault victim less than 13 years old, simple assault, corruption of minors, rape of child, attempted rape of child, and endangering the welfare of children.[1] He challenges the trial court's evidentiary rulings and the denial of his motion to quash. We affirm.

In September 2021, Crews was charged with crimes related to the sexual assault of C.H. Crews filed a motion to quash the information, which the court denied. In November 2021, the Commonwealth filed a motion to admit out-of-court statements under the tender years hearsay exception. The court granted the motion in part. It permitted C.H.'s mother, J.H., to testify

_____

[1] 18 Pa.C.S.A. §§ 3123(a)(1), 3126(a)(7), 2701(a)(1), 6301(a)(1)(ii), 3121(c), 901(a), and 4304(a)(1).

to C.H.'s out-of-court statements. However, it found C.H.'s father was not credible and could not testify as to out-of-court statements. It also found a video/audio recording of an interview at the Child Advocacy Center was not admissible as substantive evidence.

In April 2022, Crews filed a motion *in limine* to preclude the testimony of Commonwealth's expert witness, Jacqueline Block Goldstein, M.S.W. Crews argued that the Commonwealth had not informed Crews that it intended to call Goldstein as an expert witness until February 2022. Crews also asserted that he had not been able to locate an expert to determine the accuracy of Goldstein's report. Defendant's Motion in Limine to Preclude Commonwealth's Expert Witness, filed Apr. 13, 2022, at ¶¶ 9, 12. Crews argued the "evidence [was] highly prejudicial and amount[ed] to a 'surprise' to [Crews]." *Id.* at ¶ 14. The court denied this motion. It stated in a footnote that the witness could not offer testimony related to the veracity of the victim's testimony or "offer an opinion on same." Order, May 10, 2022.

At trial, the victim, C.H., testified that she had been abused, both physically and sexually, by her mother's former boyfriend "Larry," who was the father of her half-brother ("L."). N.T., Oct. 25, 2022, at 139, 142-44, 160. She testified that her mother was pregnant with L. when some of the abuse occurred. *Id.* at 150-51. She stated that she did not disclose the abuse at the time because Crews had threatened to harm her or her family. *Id.* at 151-52. C.H. did not identify Crews as the perpetrator in court. She testified she

"remembered what he used to look like, not what he look[ed] like now." *Id.* at 160.

C.H. first told her mother about the abuse when she was eight years old. N.T., Oct. 26, 2022, at 11. She identified her brother's father as the abuser. *Id.* The disclosure occurred after a doctor visit. She testified that she lied when asked at the medical appointment about potential abuse because she did not want to tell her mother at that time. *Id.* at 18. When she was 12 years old, she disclosed the abuse to her therapist. N.T., Oct. 25, 2022, at 152-53. She again identified her brother's father as the abuser. N.T., Oct. 26, 2022, at 12-13.

C.H. was asked about her relationship with her half-brother L., who was Crews's child. Crews objected to the testimony as irrelevant. N.T., Oct. 25, 2022, at 154. The Commonwealth argued it was relevant because C.H. was going to testify that she acted aggressively toward L. because she could not separate L. from Crews. *Id.* at 155. The trial court permitted the testimony but stated counsel would be "on a tight rope." *Id.* at 157. C.H. testified that what happened with Crews affected her relationship with L. because she was "angrier toward [L.] . . . [b]ecause to [her] [L.] looked, started looking like [Crews], so [she] got angry, and took it out on him." *Id.* at 159.

C.H.'s mother J.H. testified that in 2010, when she was dating Crews, she became pregnant. N.T., Oct. 26, 2022, at 47. She testified that from July through October of 2010, Crews would babysit C.H. when J.H. would work night shifts at Wal-Mart. *Id.* at 49. She stated that at that time C.H. suffered

from urinary tract infections. *Id.* at 54. She testified that when C.H. was eight years old she took her to a clinic at Nemours Hospital because C.H. had vaginal discharge with an odor. *Id.* at 58-59. After the doctors examined C.H., they had a private conversation[2] with J.H. where they informed her that C.H. had a damaged hymen. *Id.* at 60. The medical records indicated that J.H. informed the doctors at this visit that she had "concerns that her old boyfriend may have done something to [C.H.]" According to the records, J.H. said she last had contact with the boyfriend in 2010, C.H. used to "hate" him, J.H. had asked C.H. about inappropriate touching but C.H. had denied any, and C.H. had gotten a lot of urinary tract infections at that time. *Id.* at 62. At trial, J.H. testified that her boyfriend in 2010 was Crews and that she did not remember this conversation with the doctors. *Id.* at 61-63. J.H. testified that when the doctors at Nemour asked C.H. if anything had happened, C.H. said no. *Id.* at 63-64.

J.H. testified that C.H. eventually disclosed the abuse to her during a car ride, after C.H. had had a conversation with her father. *Id.* at 65. J.H. said that C.H. said to her, "Well, the other day at the doctor's office, I told you nothing ever happened, but something did happen." *Id.* C.H. told J.H. that she had been "touched on [her] cookie," which was "a phrase [they] use[d] for vagina." *Id.* J.H. said that C.H. named "Larry" as the abuser. *Id.*

_____

[2] The medical records state that the doctors "talked to mom on her own." N.T., Oct. 26, 2023, at 61; Com. Exh. 3.

J.H. testified that she had "casual relations" with another man, Larry Stevenson, but that Larry Stevenson never interacted with or babysat C.H. *Id.* at 73-74. She further testified that C.H. "was highly irritable towards [L.]," noting she would "get randomly angry at him." *Id.* at 70. Crews did not object to this testimony. On cross-examination, the following exchange occurred:

> Q. . . . . [Y]ou were telling the jury that [C.H.] was irritable, and . . . lashed out at [L.], correct?
>
> A. Yes.
>
> Q. All right.
>
> A. Yes, at a later time.
>
> Q. Okay, now and that was all because you think that she believed that . . . that was because Mr. Crews had done something to her. Is that what you're telling the jury?
>
> A. I just know she was irritable towards her brother, and we got her evaluated to understand why.

*Id.* at 85-86.

At trial, Goldstein testified as an expert in victim behavior and victim response to sexual exploitation. She testified that she was testifying as a "blind expert," had not "reviewed any materials," and knew nothing about the case. N.T., Oct. 25, 2022, at 106.

Also testifying for the Commonwealth was Dr. June Elcock-Messam, who was qualified as an expert in general and child abuse pediatrics. Additional Commonwealth witnesses included Officer John Kuryan, and Officer Jose Alvarez.

Crews testified in his own defense. He denied the abuse and denied that he had been alone with C.H. N.T., Oct. 27, 2022, at 15-36.

A jury convicted Crews of involuntary deviate sexual intercourse by forcible compulsion, indecent assault victim less than 13 years old, simple assault, corruption of minors, rape of child, attempted rape of child, and endangering the welfare of children. The court sentenced Crews to an aggregate sentence of 10 to 20 years' incarceration and seven years' probation. Crews filed a post-sentence motion, which the trial court denied. Crews timely appealed.

Crews raises the following issues:

> 1. Whether the trial court erred by granting the Tender Years Motion of the Commonwealth?
>
> 2. Whether the evidence was insufficient regarding whether or not any crime was ever committed at all and therefore insufficient to convict [Crews] beyond a reasonable doubt; [Crews'] pre-trial motion to quash was denied in error?
>
> 3. Whether it was an error to deny [Crews's] motion *in limine* to exclude the Commonwealth's expert witnesses and ultimately error to allow the testimony of the Commonwealth's expert witnesses as such and on matters within the capability of lay understanding and whose prejudicial nature substantially outweighed any probative value of the expert testimony, if any, which resulted in unfair prejudice to [Crews]?
>
> 4. Whether the trial court erred when it permitted the surprise testimony of the alleged victim and the alleged victim's mother regarding purported abuse by the victim against her younger half-brother because, it was asserted, he looked similar to and reminded the alleged victim of [Crews], who was thereby identified vicariously as her abuser in the case at bar due to the fact that he [Crews] was the father of the alleged victim's half-brother, who was

furthermore not available to testify due to the surprise, unfairly prejudicing [Crews] and leaving him without an opportunity to . . . test the veracity of these claims?

Crews' Br. at 3-4.

Crews first maintains the trial court erred when it granted the Commonwealth's tender years motion. He argues the statements admitted were highly prejudicial and denied him a fair trial because they lacked a sufficient indicia of reliability. Crews maintains C.H.'s hearsay statements occurred after her visit to the doctor's office in December 2015, and he claims that J.H., not C.H., first made statements about Crews sexually assaulting C.H. He notes that the medical records from the visit include that J.H. told providers that she suspected Crews of sexually assaulting C.H., but that at the visit C.H. denied any assault. Crews claims that after the visit C.H. mimicked J.H.'s claims. Crews further claims that C.H.'s statements were made following questioning by her father and that therefore the statements were not spontaneous and did not originate from C.H. Crews argues that C.H. claims the abuse happened while she was four or five years old, but that he had no contact with her at that time. He further maintains that at that time J.H. had a relationship with a separate "Larry." Crews concludes the statements C.H. made to her mother, her father, the Chester Police department, and the forensic examiner mirrored J.H.'s statements and were motivated by a desire to support J.H.'s "vendetta" against Crews. Crews' Br. at 17. He further claims the statements during the police interview and the forensic interview were not consistent and therefore lack reliability.

"Questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court and may be reversed on appeal only when a clear abuse of discretion was present." **Buchhalter v. Buchhalter**, 959 A.2d 1260, 1263 (Pa.Super. 2008) (citation omitted).

Hearsay is an out-of-court statement admitted to prove the "truth of the matter asserted in the statement." Pa.R.E. 801(c). "Hearsay is not admissible except as provided by [the Pennsylvania Rules of Evidence], by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. One exception to the hearsay rule is the tender years rule. 42 Pa.C.S.A. § 5985.1; **see also Commonwealth v. Wilson**, 286 A.3d 1288, 1295 (Pa.Super. 2022) (noting that the tender years exception "creates an exception to the general rule against hearsay for a statement made by a child"). "Statements admitted under this section are substantive evidence against the defendant." **Commonwealth v. Copenhaver**, 316 A.3d 1020, 1023 (Pa.Super. 2024).

The tender years exception states, in relevant part:

> (1) An out-of-court statement made by a child victim or witness, who at the time the statement was made was 16 years of age or younger, describing any of the offenses enumerated in paragraph (2), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:
>
> > (i) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
> >
> > (ii) the child either:

> (A) testifies at the proceeding; or
>
> (B) is unavailable as a witness.

42 Pa.C.S.A. § 5985.1(a)(1). Factors to consider when determining whether an indicia of reliability exists include "the spontaneity of the statements, consistency in repetition, the mental state of the declarant, use of terms unexpected in children of that age, and the lack of a motive to fabricate." ***Commonwealth v. Strafford***, 194 A.3d 168, 173 (Pa.Super. 2018) (brackets and citation omitted).

Here, the trial court permitted J.H. to testify to C.H.'s out-of-court statements, but it precluded C.H.'s father from providing such testimony and precluded the use as substantive evidence of the audio/video recording of C.H.'s interview at the child advocacy center. Further, C.H.'s father did not testify at trial and Crews does not specify where the recording of the interview at the child advocacy center or any statements made during a police interview were admitted as substantive evidence. Therefore, we will address only whether the court erred in permitting J.H. to testify as to the hearsay statements.

The court found that J.H.'s testimony regarding C.H.'s statements was admissible, reasoning that C.H.'s disclosure of the abuse had been consistent over the years and she lacked motivation to fabricate the abuse:

> [C.H.'s] disclosure of the sexual abuse she suffered has been consistent, and she spontaneously offered the initial disclosure on a car ride with her mother. [C.H.] consistently repeated the same statements over a course of several years. The following exchange occurred on the record:

> COMMONWEALTH: In 2015, when you were 8 years old, and first talked about what happened to you, did you identify it as being the person that was [L.]'s father?
>
> VICTIM: Yes.
>
> COMMONWEALTH: And is that Larry Crews?
>
> VICTIM: Yes.

[N.T., 10/26/22, at 11]. [C.H.] was questioned about her interview four years later:

> COMMONWEALTH: When you were being asked questions in 2019, were you being asked questions specifically about the abuse, the sexual abuse and physical abuse you had endured?
>
> VICTIM: Yes.
>
> COMMONWEALTH: And when you were answering this question, were you talking about the individual that had committed that abuse?
>
> VICTIM: Yes.

[N.T., 10/26/22, at 13].

[C.H.] lacked a motive to fabricate the story, as evidenced by [C.H.'s] desire to hide the abuse from her mother:

> COMMONWEALTH: Yesterday, when Mr. Johnson asked you when you were asked by the doctors, if anything happened, if anyone had touched you, and you said no, you told him that that was a lie, correct?
>
> VICTIM: Yes.
>
> COMMONWEALTH: When he asked you why did you lie, you said you didn't want to tell in front of your mom, is that correct?
>
> VICTIM: Yes.

[N.T., 10/26/22, at 18].

> . . . [C.H.'s] disclosure of events ha[s] been consistent,
> and she lacked any motivation to fabricate the story, as she
> initially wanted to hide the abuse from her mother.

Trial Ct. Op., filed Oct. 17, 2023, at 4-6 (footnotes omitted).

The court did not abuse its discretion. C.H.'s consistent disclosures over the years and her lack of motivation to fabricate the statements provide sufficient indicia of reliability, such that the court did not abuse its discretion in admitting the statements. That J.H. initially told hospital personnel of the potential abuse in a private conversation does not alter the analysis. This claim fails.

Crews next maintains the trial court erred in denying his motion to quash where C.H. could not identify him at the preliminary hearing or at trial. He points out that J.H. had two individuals names "Larry" as boyfriends around the same time and that the other "Larry" was the boyfriend at the alleged time of the assault.

"[O]nce a defendant has gone to trial and has been found guilty of the crime or crimes charged, any defect in the preliminary hearing is rendered immaterial." *Commonwealth v. Sanchez*, 82 A.3d 943, 984 (Pa. 2013). Accordingly, here, because he was convicted following a trial, Crews's challenge to the denial of his motion to quash based on C.H.'s failure to identify him at the preliminary hearing is moot. *Commonwealth v. Edwards*, 177 A.3d 963, 970 (Pa.Super. 2018).

To the extent Crews is attempting to challenge the sufficiency of the evidence to support a conviction based on C.H.'s failure to identify him at trial,

he has waived this claim by failing to present argument on the issue in his appellate brief. *See Commonwealth v. Williams*, 959 A.2d 1252, 1258 (Pa.Super. 2008) (finding issue waived where appellant failed to properly develop claim and set forth applicable case law); *see also* Pa.R.A.P. 2119(a)-(c).

In his third issue, Crews argues that the trial court erred in denying his motion *in limine* to exclude the Commonwealth's expert witnesses, Goldstein and Dr. Elcock-Messam. He argues that Dr. Elcock-Messam's testimony that C.H.'s medical records had signs of potential abuse was prejudicial because the jury would believe a doctor concerning medical findings. Regarding Goldstein, Crews maintains it was error to allow her testimony about the nature of sexual abuse victims disclosing the assault and abuse. He argues it was "an encroachment upon the province of the jury to permit admission of expert testimony on the issue of a witness'[s] credibility." Crews' Br. at 29.

Crews has waived his challenges to the expert testimony. In his motion to preclude the testimony of Goldstein, he argued the Commonwealth had provided untimely notice of her testimony. He did not argue her testimony was an encroachment upon the province of the jury.[3] Further, Crews raised

---

[3] Crews did not object to Goldstein's qualifications as an expert in victim behavior and victim response to sexual exploitation or Dr. Elcock-Messam's qualifications as an expert in general pediatrics and child abuse pediatrics. N.T., Oct. 25, 2022, at 106; N.T., Oct. 26, 2022, at 130-31.

At the hearing on the post-sentence motion, Crews argued that the expert witnesses invaded the province of the jury. N.T., Apr. 24, 2023, at 4. However, he never raised this argument before or during trial.

no objection to Dr. Elcock-Messam's expert testimony, by motion *limine* or at trial. Because he failed to raise these issues before the trial court, he has waived them for appeal. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

In his last issue, Crews argues the trial court erred when it permitted the surprise testimony of C.H. and J.H. regarding the purported abuse by C.H. of her younger half-brother where they alleged it was because the half-brother looked similar to and reminded C.H. of Crews, who was the half-brother's father. He maintains this testimony was prejudicial and irrelevant, and that the sole purpose of the testimony was to "color the jury so that they would be hostile towards [Crews] and find him guilty." Crews Br. at 33.

Crews did not object to J.H.'s testimony regarding C.H.'s behavior toward L., and he therefore waived this challenge on appeal. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Further, the Rule 1925(b) statement did not clearly challenge this testimony. Rather, it raised the following issue challenging J.H.'s testimony, which did not identify the portion of the testimony Crews' challenges:

> 3. The trial court erred and abused its discretion in allowing impermissible and prejudicial hearsay statements, testimony, and evidence during the trial, in particular, testimony from the alleged victim's mother, Jeanette Harris Walker, Dr. June Elcock-Messam, and Jaqueline Block-Goldstein.

Concise Statement of Issues Raised on Appeal Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), filed Aug. 14, 2024, at ¶ 3.[4] He therefore waived the issue for failure to raise it in the Rule 1925(b) statement. Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

The Rule 1925(b) statement and Crews' argument on appeal relate to J.H.'s testimony, not C.H.'s. He therefore waived his argument that the court erred in admitted C.H.'s testimony. Pa.R.A.P. 1925(b)(4)(vii).

Regardless, the trial court did not abuse its discretion in admitting limited testimony on this issue. It was relevant to C.H's identification of Crews as the perpetrator and any unfair prejudice did not outweigh the probative value.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/26/2025

_____

[4] In his post-sentence motion, Crews framed the issue in the same matter: "The trial court erred and abused its discretion in allowing impermissible and prejudicial hearsay statements, testimony, and evidence during the trial, in particular, testimony from the alleged victim's mother, Jeanette Harris Walker, Dr. June Elcock-Messam, and Jaqueline Block-Goldstein." Post-Sentence Motion, filed Feb. 9, 2023, at ¶ 8.